# GABRIEL NELSON v. STATE.

No. A-2297.   Opinion Filed January 9, 1915.

(145 Pac. 315.)

LARCENY—Robbery—Elements—"Larceny From the Person" Distinguished.  To constitute "robbery," as distinguished from "larceny from the person," there must be force or intimidation in the act; therefore, where a thief slipped her hand into the ·pocket of the prosecuting witness, and took his purse, and in doing so, without putting him in fear, used no more force than was necessary to take the purse from his person, held, that the crime is larceny from the person, and not robbery in the first degree.

(Syllabus by the Court.)

*Appeal from District Court, Choctaw County;
Summers Hardy, Judge.*

Gabriel Nelson was convicted of robbery in the first degree, and appeals.   Reversed.

*T. C. Humphrey,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, J.   This appeal is prosecuted from a conviction had in the district court of Choctaw county, in which the defendant was found guilty of robbery in the first degree, and her punishment fixed by the jury at imprisonment in the penitentiary for a term of ten years.   On the 18th day of April, 1914, judgment was rendered and the court sentenced the defendant in accordance with the verdict of the jury.

The information charges that on or about the 28th day of August, 1913:

"The said Gabriel Nelson did then and there unlawfully, wrongfully, willfully, and feloniously and forcefully take from the person of E. B. Turner certain personal property, to wit, the sum of $45, lawful money of the United States, of the value of $45, then and there in possession of the said E. B. Turner, without the consent and against the will of the said E. B.

Turner by means of force and fear employed by the said Gabriel Nelson toward, on, and upon the said E. B. Turner as follows: The said Gabriel Nelson did then and there with her hands and arms seize and take hold of the said E. B. Turner, and did thereby overpower and overcome the resistance of the said E. B. Turner, and then and there took the said money in the manner and form aforesaid, contrary to," etc.

The principal question urged on this appeal as a ground for a reversal of the judgment is the insufficiency of the evidence to warrant a conviction.

The prosecuting witness testified that he was engaged in running a transfer hack in the city of Hugo; that he first hauled a washstand and rug to the defendant's resort in the negro quarter of Hugo; that two or three months afterwards she passed him on the street and told him to come and get the washstand and rug, and that he went to her house. His testimony as to what occurred at the defendant's place is as follows:

"A. She unlocked the door, and I walked in, and it was sitting right where I put it and she slapped the door, too, and locked it and pulled the curtains down and asked me to do business with her. I told her no; I wouldn't do business with her. I told her to let me out of here. 'I haven't got any business in here, if that is what you are looking for,' and I took hold of the door, and she run her hand into my pocket and took my purse, and says, 'If I can't get your money one way, I will get it another.' Q. What else occurred down there, if anything? A. We run together then; of course I was trying to get my money, and in the scuffle she hollered for help, and there was a negro man came in, and he says, 'What is the matter here?' and I says, 'This woman has robbed me,' and he says, 'If she has robbed you, she has got to give your money back,' and she says, 'There lays your money,' and I stooped down there and picked some of it up, and the negro ordered me out of the house, and I told him I would go out when I got my money, and I counted it, and, says I, 'There is $17 of my money gone.'"

J. W. Milam testified: That he was police judge; that the defendant was arrested and brought before him and pleaded guilty to stealing $17.50 from Mr. Turner. That she related the circumstances as follows: That Turner had made improper proposals to her and wanted to have intercourse with her, and

they got into a quarrel over the price; that he wanted to give her 50 cents or 75 cents and she wanted $1, and he had his pocketbook in his hand, and she either grabbed or knocked the pocketbook out of his hand. That Mr. Turner's money was returned to him.

The defendant, as a witness in her own behalf, testified that she was about nineteen years old; that the prosecuting witness met her on the street, and said he wanted to do a little business with her, and she told him to come down whenever he felt like it; that when she returned home he was standing in her door. Her further testimony is as follows:

"Q. What did you do? A. I walked in and pulled the curtain down on the right-hand side, and on the left-hand side by the bed the curtain was already down; I had never raised it up that morning. Q. When you got the curtain down it was pretty dark in the room? A. Yes, sir; it was. Q. Well, what took place, what about the door? A. I locked the door. I pushed it to and thumb-latched it. Q. You didn't lock it, just thumb-latched it? A. Yes, sir, and asked him was he ready to do it, and he said 'Yes,' and he asked me, 'What are you going to charge me?' and I says, 'A dollar,' and he says: 'That is too much. I will give you a quarter.' And I says 'No;' and he says, 'Well, I will give you 50 cents;' and I says, 'No; I won't do that.' And he says, 'That's all a negro whore is worth, two bits or 50 cents,' and I says, 'Well I won't do anything.' He says, 'I will give you a quarter to get rid of you,' and I says, 'Give me the quarter,' and I wouldn't of took the quarter, but he put his hand in his pocket and got his pocketbook out, and I knocked the pocketbook up that way, and the money went all over the floor and the bed. Q. Did you get on the bed? A. Yes, sir; we was scuffling on the bed. Q. Well, were you mad or in a good humor? A. No, sir; I was not mad; we were both laughing. Q. It was a kind of love struggle, was it? A. Yes, sir."

The Attorney General has filed a confession of error, based upon the holding of this court in the case of *Monaghan v. State,* 10 Okla. Cr. 89, 134 Pac. 77, 46 L. R. A. (N. S.) 1149, which concludes as follows:

"When the facts in this case are considered in connection with the Monaghan opinion, we cannot say that the evidence supports the charge of robbery. It appears from the evidence that

the defendant in this case did no more than did Monaghan in the reported case, except after the pocketbook was snatched there was a "scuffle" between them. We are of the opinion, therefore, that the judgment is not supported by the evidence, but that the defendant should be prosecuted for the offense of larceny from the person."

The crime of robbery is defined in our Penal Code as follows:

Section 2364, Rev. Laws 1910:

"Robbery is a wrongful taking of personal property in the possession of another from his person or immediate presence and against his will, accomplished by means of force or fear."

Section 2365, *Id.*:

"To constitute robbery, the force or fear must be employed either to obtain or retain possession of the property, or to prevent or overcome resistance to the taking. If employed merely as a means of escape, it does not constitute robbery."

Section 2366, *Id.*:

"When force is employed in either of the ways specified in the last section, the degree of force employed is immaterial."

The crime of grand larceny is defined in our Penal Code as follows:

Section 2655, *Id.*:

"Grand larceny is larceny committed in either of the following cases: First. When the property taken is of value exceeding twenty dollars. Second. When such property, although not of value exceeding twenty dollars in value, is taken from the person of another."

Here the allegation is that the property was taken by means of force and fear. There was no evidence tending to show that the prosecuting witness was put in fear, and there was no evidence of force sufficient to constitute robbery as distinguished from larceny from the person. The difference between robbery and larceny from the person of another lies in the force or intimidation used. The Legislature has formally and fully recognized the distinction by the enactment of section 2655 above quoted, and if the force used was only such as was necessary to take the money from the person of the prosecuting witness, without resistance on his part, it was not sufficient to constitute

robbery, as otherwise there would be no distinction between robbery and larceny from the person. *State v. Paisley,* 36 Mont. 92, Pac. 566; *State v. Parker* (Mo.) 170 S. W. 1121.

In the Monaghan case it was held that:

"To constitute 'robbery' as distinguished from 'larceny from the person,' there must be force, violence, or intimidation in the taking. Therefore, where there is no evidence tending to show that the defendant obtained or retained the personal property alleged to have been taken by force and violence or by putting in fear, the crime is grand larceny, and not robbery, and a verdict of guilty of robbery in the first degree is contrary to law and the evidence."

We here repeat what is said in the opinion in that case:

"It would seem, and we would suggest, that always in a case of this character, where the line of demarcation between offenses, as in this case, has a very narrow margin, the safe practice, where the proof may be uncertain, is to charge the lesser offense."

It follows that the confession of error should be sustained. The judgment of the court below is reversed. The warden of the penitentiary is directed to deliver the defendant to the sheriff of Choctaw county, who will hold her in custody until she shall be discharged therefrom, or as otherwise ordered according to law.

ARMSTRONG, P. J., and FURMAN, J., concur.