**Jerry Lee DUFFEY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–138.**

Court of Criminal Appeals of Oklahoma.

Sept. 14, 1973.

**422**

Stephen Jones, Enid, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

## OPINION

PER CURIAM:

Appellant, Jerry Lee Duffey, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the offense of Robbery with a Dangerous Weapon, After Former Conviction of a Felony, Case No. CRF–70–1467, and Rape in the First Degree, After Former Conviction of a Felony, Case No. CRF–70–1468. His punishment was fixed at terms of five hundred (500) years in each case, said sentences to run consecutively, and from said judgments and sentences, a post-conviction appeal has been perfected to this Court.

At the trial wherein both charges were tried together by agreement of the parties, the prosecutrix testified that on June 9, 1970, she and her infant daughter were at their residence approximately one mile south of Hefner Road on Sooner Road; that at approximately 11:30 a. m. someone knocked at her door and upon answering the same, she observed a man, whom she identified in court as defendant, standing at the door. The defendant asked if he could get some water for his car because it had overheated. She gave defendant a bucket of water which he poured into his automobile radiator. Defendant again knocked at the door and asked her if she had a telephone. Defendant stated that he might need to call a service station but would try to start the car again. Defendant returned to the house and she let him enter, handing him a telephone book. As she began to rise from a chair, defendant pushed the chair and she fell to the floor. Defendant produced a knife, which he held at her throat. She started to scream and defendant said "Shut up, I won't hurt you, all I want is your money." (Tr. 14) Defendant helped her up and then bent her left arm behind her back. She advised de-

fendant that she did not have very much money, but defendant stated that he wanted all of it. Defendant hooked the front door and kitchen door and then dumped the contents out of her purse. Defendant secured some neckties from her husband's closet and tied her hands behind her back and made her lie down on the floor in the dining room. Defendant grabbed her shorts and removed them. She screamed "Oh no, please don't rape me, I'm pregnant." (Tr. 16) Defendant replied that "He wouldn't hurt me if I promised I wouldn't tell but he said if I told, he would come back and kill me." (Tr. 16) Defendant obtained two other neckties, gagged her, blindfolded her and then raped her. Defendant went outside and attempted to start his automobile and failing to do so, returned to the house to see if she had moved. Shortly thereafter her mother-in-law came to the backdoor and yelled. She was unable to call back because of the gag and her mother-in-law came in through the side door which had not been locked. She mumbled through the gag that she had been raped and asked the mother-in-law to get the baby out of the house. Soon thereafter Mr. Hanson came into the dining room and untied her.

Officer Connely testified that he was a crime lab technician with the Oklahoma City Police Department; that he proceeded to the scene on June 9, 1970, and photographed the house and a 1963 white over red Chevrolet. He processed the Chevrolet for fingerprints and found a latent fingerprint on the inside window of the driver's side. He later compared the latent fingerprint with a known specimen of defendant's fingerprints and was of the opinion that they were identical.

Doris Scoggins, mother-in-law of the prosecutrix, testified that at approximately 11:30 a. m. on the morning in question she observed a car that she didn't recognize, drive into the prosecutrix's driveway. She kept watching the house and observed a man running back and forth between the house and his car. She yelled at the man and when she received no response, got in her car and drove across an open field to the prosecutrix's house. The man, whom she identified in court as defendant, came up to her and asked if she had a jumper cable. She informed the defendant that she did not and went up to the house and hollered to the prosecutrix. She heard some noise coming from the dining room and upon entering the house, found the prosecutrix tied, gagged and nude from the waist down.

William Hanson testified that he lived in the area and that on the morning in question he was driving down Sooner Road. He slowed down near the prosecutrix's house to make a turn when a man, whom he identified in court as defendant, jumped in the pick-up. Defendant asked him to take him to the Expressway and when he responded that he would not, defendant jumped out and ran. He next observed Mrs. Scoggins come running out of the prosecutrix's house and asked him to go in and untie her. He jerked the spark plug wires off the car parked in the driveway and went into the house, finding the prosecutrix bound and gagged.

James Dewar, a pathologist at Baptist Memorial Hospital, testified that he examined slides concerning the prosecutrix brought to him by one of the technologists. He examined the slides microscopically and found present spermatozoa.

Dr. Sam Hendrix testified that he examined the prosecutrix on June 9, 1970. He obtained secretions from the prosecutrix's vagina, which were placed on slides. The slides were given to a laboratory technician to transport to Dr. Dewar.

Julie Lain testified that she was employed as a medical technologist at Baptist Hospital on June 9, 1970; that she received slides from Dr. Hendrix concerning the prosecutrix and delivered them to Dr. Dewar's office.

For the defense Lula Duffey, defendant's mother, testified that she awoke her son on June 9 at approximately 6:00 a. m.

She advised defendant that he should get his car brakes repaired that day.

Simon Petties testified that he was a mechanic and that on June 9, 1970, at approximately 8:00 a. m. defendant talked to him about doing repair work on defendant's brakes. Defendant stated that he would take some people to work, go home and get some money and return to have the work done. Defendant left and did not return that day.

Alma Thompson testified that the defendant came to her home in Arcadia at approximately 10:45 a. m. and that they visited until approximately 11:05 a. m.

Defendant testified that his mother woke him up between 5:30 and 6:00 on the morning in question. He talked to Simon Petties about working on his car but decided to wait several days because he did not have any money. He visited with Miss Thompson for a short while and upon leaving, met Clarence Williams, a shade tree mechanic, near the post office in Arcadia. Williams agreed to repair his car and he left the car with Williams. He did not see his car again after he turned it over to Williams. He denied being in the vicinity of the Scroggins' residence and denied attacking the prosecutrix.

■ The first proposition asserts that the verdicts are not supported by the evidence. From the foregoing statement of facts, we are of the opinion that this proposition is totally without merit. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805 (1970).

■ The second proposition contends that the trial court erred in instructing the jury that they could presume fear on the part of the complaining witness. The record reflects that the trial court instructed the jury in both the rape and robbery cases that when the offenses were accomplished by means of a dangerous weapon, fear will be presumed and it is not necessary for the State to establish fear by independent proof. Although this proposition is improperly before this Court inasmuch as defendant failed to object to the giving of the instruction, we are of the opinion that the instruction was proper. In Jones v. State, 84 Okl.Cr. 81, 179 P.2d 484, we stated in the first Syllabus:

"Where a pistol is pointed in a threatening manner at one who is the owner or custodian of money, who thereupon permits it to be taken, such act is robbery, although the owner or custodian may not state he is in actual fear, since fear is presumed when such act is committed violently and against the will of the person robbed."

It would be most illogical to conclude that if fear may be presumed in a robbery case when a dangerous weapon is used that the use of a dangerous weapon in a rape case would produce anything less than a similar fear in the mind of the victim. We therefore find this proposition to be without merit.

■ The final proposition asserts that the sentences imposed were excessive. We concur. We are of the opinion that justice could best be served by modifying the sentences to life imprisonment in both cases to be served concurrently and as so modified, the judgments and sentences are affirmed.