Tommy **WHITEHEAD**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–227.

Court of Criminal Appeals of Oklahoma.

Sept. 4, 1974.

Rehearing Denied Sept. 26, 1974.

Don Anderson, Public Defender, Tommy Whitehead, pro se, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant Tommy Whitehead, hereinafter referred to as defendant, was charged by Information in the District Court, Oklahoma County, Case No. CRF–73–1377, with the crime of Robbery with Firearms. The Information was later amended to the charge of Robbery in the First Degree. Defendant was convicted of the latter charge by a jury which recommended a sentence of fifty (50) years imprisonment. Defendant was sentenced in accord with that recommendation, and a timely appeal has been perfected to this Court.

The State's first witness at trial was Mark Brooming, the manager of Kimberling's IGA, located in an Oklahoma City shopping center. He testified that the clerk on duty at the time of the robbery was Lonnie Wayne Johnson, who had been transferred to another Kimberling store in Oklahoma City after the robbery, and had later resigned and moved to California. Brooming also testified that he had given no one permission to take from the store the money which was taken in the robbery.

The next witness for the State was Detective O. R. Summers of the Oklahoma. City Police Department, who testified that he and several other officers had the store under surveillance on May 14th and 15th, 1973, in response to "information" they had received. On the evening of May 15th, Detective Summers and his partner, Detective Behrens, stationed themselves in a building across the street from the store. Detectives Guinn and Knight were stationed down the street in another unit, and Officer Shobert was stationed inside the store. At approximately 8:00 p. m. they observed a blue Chevrolet pickup park in front of a nearby drug store. A Negro male emerged, and walked over to the grocery store, which was closed at the time. He stopped just short of the door, looked around, looked at his watch, and pulled his shirt tail up and apparently stuck some-

thing in his belt. After looking around once again, the subject walked through the exit door of the grocery (the entrance door had already been closed), at which point Summers lost sight of him. About 30 seconds later, the subject re-emerged with a sack in his hand and ran toward the pickup truck. At this point Detective Summers and his partner ran to their car and proceeded to the shopping center parking lot. As they approached, they heard three shots. The unit driven by Detectives Summers and Behrens, converged with the one driven by Detectives Knight and Guinn, and trapped the pickup as it attempted to leave the parking lot. Detective Summers then arrested defendant, who was wounded in the arm. He also saw Detective Guinn retrieve a pistol from within the pickup, at which time he discovered a white male adult and a small female child inside the pickup. On cross-examination, Detective Summers stated that he had never seen defendant in possession of the pistol, and did not know he had it.

The next witness for the State was Officer Shobert, who was stationed inside the grocery store at the time of the robbery. He testified that he had placed 25 marked one dollar bills in the cash drawer of the store on the morning of May 15, 1973. At approximately 7:45 p. m. that evening, he returned to the store and positioned himself behind a potato chip display rack about 30 feet from the cash register. At around 8:05 p. m. he saw a Negro male, whom he identified as the defendant, enter the store through the exit door and go over to the register where he pulled a nickel or chrome plated pistol from his waistband. Holding the gun flat on the counter, defendant told the cashier to "give me your money and make it quick." The cashier asked him if he wanted it in a sack, and he said, "yes, but hurry." Officer Shobert further testified that he followed defendant out the door and ordered him to halt. Looking back over his shoulder at Shobert, defendant threw down the paper sack full of money and ran. Officer Shobert fired three shots, the first of which struck defendant in the shoulder. Shobert then observed defendant run and get into the pickup truck. When the pickup began backing out of its parking place, Shobert had moved behind it where, for the first time, he observed a little white girl inside. At this point the vehicles driven by the other officers surrounded the pickup and defendant was arrested. Officer Shobert further testified that he then retrieved the money which had been thrown down by the suspect as he ran, and sealed it in an evidence envelope. He counted the money, and testified that the total was $961.00, which included the 25 marked one dollar bills he had earlier placed in the cashier's drawer. At trial, he identified the marked money (State's Exhibit 2), and the pistol (State's Exhibit 3). On cross-examination he stated that the robbery was a "setup" and that the exit door had been left unlocked for that purpose.

The next witness for the State was Detective Jerry Guinn, who testified that he and his partner, Detective Knight, had maintained a surveillance of the grocery on the night in question, from their patrol unit, from about a half block away. His testimony was substantially the same as that of Detective Summers' as to the events immediately preceding and subsequent to the robbery. He further testified that he had removed a chrome plated revolver from the pickup at the time of defendant's arrest. He admitted, on cross-examination, that the pistol in question was a blank pistol, incapable of firing live ammunition, and also verified the fact that the officers had prior knowledge that there was to be a robbery that night at 8:00 p. m. Thereupon, the State rested.

After the court had overruled defense counsel's Motions for Dismissal based on entrapment and on lack of evidence, defendant testified in his own behalf. He admitted entering the store and receiving

the money from Lonnie Johnson, the store's assistant manager, but testified that he had done so pursuant to a pre-arranged scheme by which Johnson had agreed to hand him the money. In fact, the exit door had been left unlocked as a result of this scheme. Defendant further testified that he had not taken the blank pistol inside the store, but had left it in the pickup.

Defense counsel next moved to introduce the preliminary hearing testimony of Lonnie Wayne Johnson, the above-mentioned assistant store manager. The State objected on the ground that defendant had failed to issue a subpoena for Johnson, hence had failed to exercise due diligence in obtaining him as a witness. After the court had overruled defendant's Motion, the case was submitted to the jury, which returned the guilty verdict.

■ In his first proposition of error, defendant argues that the evidence was insufficient to sustain the charge of Robbery in the First Degree. We first refer to the applicable statutory provisions:

21 O.S.1971, § 791 provides: "Robbery is a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

21 O.S.1971, § 797 provides: "Robbery, when accomplished by the use of force, or of putting the person robbed in fear of some immediate injury to his person, is robbery in the first degree. . . ."

In our view, the only possible basis for defendant's allegation of insufficient evidence would be that, since the assistant manager Lonnie Johnson did not testify, the State could not positively prove the element of fear included in the above statutory definition of robbery. We dismiss this argument for several reasons:

■ First, since the testimony of Officer Shobert[1] was sufficient to establish the element of force, it was unnecessary to

further prove the element of fear. See 21 O.S.1971, § 797, supra, which describes robbery as a wrongful taking accomplished by means of force *or* fear, not force *and* fear.

■ Second, we have consistently held that fear on behalf of the person robbed is presumed when a gun is pointed at him. See Ross v. State, 31 Okl.Cr. 143, 237 P. 469, where we stated:

"It has been held that, if there is an assault which would furnish a reasonable ground for fear, the robbery is complete."

See also Jones v. State, 84 Okl.Cr. 81, 179 P.2d 484 (1947). In the first paragraph of the Syllabus in Edwards v. State, 55 Okl. Cr. 110, 25 P.2d 800 (1933), we stated:

"Where a pistol is pointed in a threatening manner at an owner or custodian of money, who thereupon permits it to be taken, such act is 'robbery,' although the custodian or owner may not be in actual fear, since fear is presumed where such act is committed violently and against the will of the person robbed."

We, thus, find defendant's first proposition of error to be without merit.

■ In his second proposition of error, defendant argues that the 50 year sentence imposed was excessive in view of the fact that the robbery was accomplished by use of a blank pistol which could not possibly have hurt anyone. However, we feel that the sentence was not excessive, particularly in view of the fact that at least three shots were fired at the defendant, any one of which could easily have struck a bystander. Further, the evidence was that defendant knowingly used a pickup truck for the robbery and attempted getaway in which a small child was a passenger. The fact that this child could easily have been killed or injured was borne out in the testimony of Officer Shobert, who stated that he had the child in his sights at one time, and had to raise his gun to avoid shooting

---

1. His testimony was that he saw defendant exhibit a pistol and heard him issue commands to the cashier.

her. In view of the evidence establishing the commission of the offense, and in view of its possible consequences to innocent by-standers, we do not feel that the sentence imposed was so excessive as to shock the conscience of this Court. As we stated in Johnson v. State, Okl.Cr., 386 P.2d 336 (1963):

"In numerous decisions this court has adhered to the rule that the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case, and that this Court does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the Court. McCluskey v. State, Okl. Cr., 372 P.2d 623."

We, accordingly, find this assignment of error to be without merit.

■ Defendant raises a third proposition of error by way of an amended pro se brief. In it, he argues that the trial court erred in overruling his motion to introduce the recorded testimony given by Lonnie Wayne Johnson at preliminary hearing. The transcript reveals that defense counsel moved to introduce the prior testimony on the ground that Johnson, who had been endorsed and subpoenaed as a State's witness, had since moved to California and was, therefor, unavailable at trial. An in camera hearing was then held, in which the State objected to the introduction of Johnson's prior testimony on the ground that defendant had failed to subpoena Johnson, and thus had failed to show due diligence in producing him for trial. The District Attorney further stated that the State had not produced him as a witness because the sufficiency of other evidence was such that it had been unnecessary to go to the expense of bringing Johnson all the way from California to testify. Thereupon, the Court overruled defendant's motion, to which an exception was taken.

In Disheroon v. State, Okl.Cr., 518 P.2d 892, 894, (1974), we were faced with a situation wherein the trial court had allowed the State to introduce the preliminary hearing testimony of one of the State's witnesses whom the trial court found to have been unavailable for trial. In affirming the trial court's ruling, we cited a portion of In re Bishop, Okl.Cr., 443 P.2d 768, as follows:

" ' . . . [preliminary hearing testimony of a State's witness] may be read at the accused's trial . . . But . . . the State is required to show that a diligent effort has been made to locate the missing witness, *and that he is actually unavailable* . . .' "

Although the factual situation in Disheroon v. State, supra, involved the State's attempt to introduce prior testimony of one of its own witnesses, and in the instant case it is the defendant who is attempting to introduce prior testimony, we feel the reasoning cited above is also controlling here. Since defendant failed to subpoena the witness, we feel that he has failed to make a diligent effort to produce him at trial. Further, as the evidence showed only that Johnson was outside the State of Oklahoma, defendant wholly failed to establish actual unavailability, as required by the above cited authority. We, therefore, find this proposition of error to be without merit.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.