THE STATE v. LAMB, *Appellant.*

Division Two, November 9, 1897.

1. **Robbery**: ALLEGATIONS IN INDICTMENT. Under the provisions of section 4105, Revised Statutes 1889, it is sufficient for the indictment to allege that the property obtained by robbery belonged to the person robbed, and it was not necessary to allege that it belonged in part to his partner, nor to name such partner.

2. ————: VARIANCE BETWEEN INDICTMENT AND EVIDENCE. The indictment charged robbery "from the person." The evidence showed that it was committed "in his presence." The defendant and a companion entered the owner's saloon and when the defendant pointed a pistol in his face and said, "We want your money and we want it d—d quick," the owner, being alarmed, said, "Go back and help yourselves," which the defendant at once did. *Held,* there was no variance between the indictment and the evidence, the words "from his person" being tantamount to "in his presence."

3. **Failure to Give Proper Instructions.** The defendant should except in the trial court at the time other instructions are given, instead of in the motion for a new trial, if he desires to raise the point that necessary instructions on behalf of defendant were not given.

4. **Robbery**: FEAR: PROOF. If the robbery be laid to have been done violently and against the will, actual fear need not be proved at the trial, because under such allegations the law *in odium spoliatoris* will presume fear.

5. ————: NUMBER OF WITNESSES. A court has some discretion as to the number of witnesses defendant may introduce to testify to the same things, and may limit that number, and unless an abuse of such discretion appears no reversible error has been committed.

6. ————: REMARKS OF ATTORNEY. Improper remarks by attorneys in the case must be excepted to at the time, and statements in a motion for a new trial are no evidence that improper remarks were made.

State v. Lamb.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

*Thomas B. Harvey* for appellant.

(1) The indictment alleged a robbery by taking money from the person, and the evidence showed only a taking from the presence. The variance is fatal. R. S. 1889, sec. 3530; 2 Bishop's New Cr. Law, sec. 1177; Wharton's Cr. Law, 3847. (2) The second instruction was erroneous in commenting on the evidence, and in saying that a taking from the presence would sustain a charge of taking from the person, and in instructing that a charge of robbery (the actual taking and carrying away) would be sustained simply by drawing a pistol and demanding money. (3) The court erred in refusing to permit appellant to show the bruised and mutilated condition of his face at the time of his identification by the prosecuting witness. *State v. Howard,* 118 Mo. 141; Wharton, Cr. Ev., secs. 806, 807. (4) The court erred in limiting appellant to six witnesses to sustain his alibi, when he had and offered several others on that important issue.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The indictment is good. Kelley's Criminal Law, p. 415; 1 Hale, p. 534; *State v. Howerton,* 59 Mo. 91; 2 East's P. C. 783. (2) Remarks of counsel in the course of argument to the jury not excepted to at the time will not be noticed on appeal. *State v. Welsor,* 117 Mo. 570. (3) It is sufficient to allege that the property belongs to any one or more of partners with-

out naming them.   R. S. 1889, sec. 4106.   (4)' Time is not of the essence of the offense, and although the —— day of October, 1896, may have been imperfectly stated, yet it is not prejudicial error.   R. S. 1889, sec. 4115; *State v. Crawford*, 99 Mo. 74.

SHERWOOD, J.—Robbery in the first degree the charge, and five years' imprisonment in the penitentiary the result of the trial, constitute the outlines of this record.   *Lamb* is the name of the defendant, although the occurrences preserved in the record would seem to indicate that name to be somewhat of a *misnomer*.

A summary of the facts gleaned from the record is to the effect that one Peterson and Pullam were partners, running a saloon at the corner of Twenty-first street and Clark avenue, in the city of St. Louis, Missouri, and that on the night of the thirty-first of October, 1896, Peterson was behind the bar playing the part of the "obliging mixer of life's elixir," while his partner, Pullam, and his partner's sister were seated in a small room partitioned off in the rear of the saloon, with a glass door between the small room and the main or outer room of the saloon.   About 9:40 o'clock these three individuals occupying the relative positions heretofore stated were the only occupants of the saloon.   A few minutes prior to this time the defendant, and an unknown man in company with him, were seen at the bar of an adjoining saloon in the same block, taking a drink.   In less than five minutes thereafter two men suddenly entered the saloon of Peterson & Pullam, both of them leveled their revolvers at the head of Peterson, and Lamb, the defendant, said: "We want your money, and we want it d——d quick." Peterson being alarmed, said: "Go back and help yourselves."   The other robber then kept his pistol leveled at Peterson's head, while Lamb went behind

the bar and emptied the till, but in getting the $18 or $20 from the till, in silver, he rattled it and caused some of it to fall on the floor, and this attracted the attention of Pullam, who was seated in the small room first mentioned. Pullam stepped to the glass door between the two rooms, opened the same, saw the situation at a glance, drew his revolver and opened fire on the robbers, which was promptly returned by the unknown companion of defendant who fired five shots at Pullam, and turning, fired one shot at Peterson, and then both defendant and his unknown companion fled out of the door and down an alley, escaping for the time being, and carrying with them the money. The police in eight or ten days arrested defendant, and witness Peterson was taken before defendant, and fully identified him. At the trial the defendant was identified by both Peterson and Pullam. The defense was an *alibi*, the defendant seeking to show by himself and others that on the night of the robbery he was in the silver parade in the city of St. Louis, and there was evidence of several witnesses to that effect. Two witnesses also swore to the previous good character of defendant.

The indictment, questioned by the motion in arrest, charges the robbery thus: "That Thomas Lamb, late of St. Louis, in the city of St. Louis aforesaid, on the twenty-first day of October in the year of our Lord, one thousand, eight hundred and ninety-six, at St. Louis, in the city of St. Louis aforesaid, with force and arms, in and upon one Andrew Peterson feloniously did make an assault, and the said Andrew Peterson, in fear of an immediate injury to his person then and there feloniously did put, and by force and violence to his person $17 lawful money of the United States of the value of $17, all of the goods and property of the said Andrew Peterson from the person and against the

will of the said Andrew Peterson, then and there, with force and violence as aforesaid, feloniously and violently did rob, steal, take and carry away, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.''

1.   Section 3530, Revised Statutes 1889, is the basis for the indictment, which makes all the necessary allegations.   And under the provisions of section 4105, Revised Statutes 1889, it was sufficient for the indictment to allege that the property obtained by the robbery belonged to Peterson, and it needed not to allege that such belonged to other parties or owners, nor name them.

2.   And relative to the contention that there was a fatal variance between the allegation of the indictment and the evidence offered in support thereof, to wit, in that while the indictment charges a robbery ''from the person,'' the evidence shows a robbery ''in the presence.''   There are two reasons which readily overthrow such contention.   The first is that section 4114, Revised Statutes 1889, provides that in case ''there shall appear to be any variance between the statement in the indictment and the evidence offered in proof thereof, etc., etc., such variance shall not be deemed grounds for the acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant.''   *State v. Wammack*, 70 Mo. 410; *State v. Sharp*, 71 Mo. 218.   There has been no such finding by the trial court.

The second reason is that at common law the words ''in his presence'' were added to the words ''from the person of another,'' by judicial construction as substitutionary of, and tantamount in meaning to, ''from his person'' and our statute is but declaratory of the com-

mon law. 2 East's Pleas of Crown, 723, 725, 728; 2 Bish. New Crim. Law, secs. 1177, 1178, and cases cited; *State v. Lawler*, 130 Mo. *loc. cit.* 371.   So that there is no variance presented by the record.

3.   The directions to the jury on the law of the case given by the court of its own motion, which will accompany this opinion, are all combined in one instruction which is such as usually given in cases of this sort, and even if as claimed in the motion for a new trial, the court failed to give necessary instructions under the law and evidence in behalf of the defendant, he should on that ground have excepted at the time the other instruction was given.   *State v. Cantlin*, 118 Mo. 100; *State v. Paxton*, 126 Mo. 500, and other cases.

4.   As already stated, the evidence showed that Peterson was alarmed sufficiently at least to prevent his making any outcry, or calling on his partner who was in an adjoining room.   But the law is that if the fact be laid to be done violently and against the will, actual fear need not be proved at the trial, because under such allegations the law *in odium spoliatoris* will presume fear.   *State v. Stinson*, 124 Mo. 447; *State v. Lawler*, 130 Mo. 366, and cases cited.

In such circumstances the claim made in the motion for a new trial that an instruction should have been given "under the evidence in the case with reference to the possible guilt of the defendant of petit larceny," is simply preposterous.

5.   The record does not show that defendant was beaten by a policeman; it shows the contrary, and it shows also that the prosecuting witness and Walsh, a policeman, were allowed to testify as to the condition of defendant's face, as to whether it was bruised or not, .etc., on the day next after his arrest.   This testimony was allowed to be introduced on the identification of defendant by the prosecuting witness, so that the claim

that such testimony was excluded is unsupported by the record.

6. As to the charge that the court excluded competent evidence on the part of the defendant, the only ground for that charge consists in these circumstances: Six witnesses besides .defendant having testified that defendant was at the free silver parade and tending to show that defendant did not participate in the robbery, "whereupon the defendant by his attorney produced several additional witnesses in court and requested that they be sworn and permitted to testify, and stated that they would testify that on the night of the alleged robbery the defendant, Thomas Lamb, was present at the place of meeting of persons and clubs to participate in the Democratic parade, and was in said parade from the time that it started from Twelfth and Market streets, about 9 o'clock, until it disbanded, in the neighborhood of 12 o'clock, and that from about half past eight until 12 o'clock on the night of the alleged robbery, the defendant was in their company and presence and he was not during that time at the place of the alleged robbery.''

But the court refused to hear any more witnesses on the subject of *alibi*. How fully and with what degree of particularity the seven witnesses testified as to an *alibi* for defendant, does not appear, their testimony being taken down in short form. Now if they testified as fully as was proposed the non-testifying witnesses would testify, we are not prepared to say as a matter of law that the court erred in refusing permission to other witnesses to testify on the question of *alibi*. A court has some discretion in these matters, and may limit the number of witnesses on a particular point, and unless an abuse of such discretion appears, no reversible error· has been committed. 2 Elliott's Gen. Prac., sec. 564, and cases cited; *State v. Whitten*, 68 Mo. *loc. cit.* 92.

7.   As to improper remarks having been made by the circuit attorney, it suffices to say that none appear of record, and if they did so appear, no exceptions to them were saved at the time, and furthermore the statement of a fact in a motion as occurring during the trial is no evidence whatever of such occurrence, as we have so often decided.

Having found no error in the record, we affirm the judgment.   All concur.