STATE of Missouri, Respondent,

v.

Joseph Demarion JOHNSON, Appellant.

No. 55065.

Supreme Court of Missouri, Division No. 2.

Sept. 14, 1970.

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Pierce, Duncan, Hill & Russell, Kansas City, for appellant.

BARRETT, Commissioner.

Joseph Demarion Johnson was charged, tried and found guilty of robbery in the first degree. The jury fixed his punishment at 25 years' imprisonment and he has appealed. The indictment charged that on August 25, 1967, Johnson, feloniously, made an assault upon David Weinstein with a .38 caliber revolver and "did rob, steal, take and carry away certain property, to wit: one (1) .38 calibre revolver of the value of seventy ($70.00) Dollars, One Thousand One Hundred Dollars ($1,100.00) in lawful money of the United States * * * the money and personal property of the said David Weinstein, *from the person* and against the will of the said David Weinstein then and there, by force and violence to the person and against the will of the said David Weinstein * * *."

The background was that David Weinstein personally owned and operated a liquor-grocery store at 2123 Truman Road known as David's Market. On August 25, 1967, about 3:20 in the afternoon, there were present in the store, Mr. and Mrs. Weinstein and Mrs. Reynolds when three men entered the store and with a shotgun and revolver held up the Weinsteins. One of the men pointed a shotgun at Mrs. Weinstein, the defendant Johnson, known to Weinstein, pointed a gun at Mr. Weinstein, compelled him to open the safe, took a gun from behind the counter, keys from his pocket, $700.00 to $750.00 cash from the safe and about $400.00 from the cash register. Johnson gave the keys to Weinstein, compelled him to open a back door and the robbers fled. Mrs. Weinstein set off an alarm and one of the robbers, Bill Louis Colthorp, (his name has been misspelled throughout this record) was captured nearby. He was carrying a rug wrapped around a loaded shotgun. He was sentenced to 45 years imprisonment—that conviction was affirmed in State v. Colthorp, Mo., 437 S. W.2d 75. In July 1968 Johnson was arrested in California "for disturbing the peace," he was extradited to Kansas, removed to Missouri, identified as one of the Weinstein robbers and on January 30, 1968, indicted.

One of his preliminary points is that the court erred in overruling his motion to quash the indictment based upon the allegation that in violation of his constitutional rights he was "illegally, forcefully and unconstitutionally" brought into Missouri and therefore the Jackson County Circuit Court had no jurisdiction of his person. On this motion, heard immediately after the hearing on his motion to suppress the lineup evidence, it developed, in the defendant's own language, that in California "I signed an extradition paper to come back." He said, however, that the lady committing judge in California told him that all Missouri charges had been dis-

missed. In this hearing, however, it developed that there was an extradition warrant and a hearing. While the Kansas City police officer was testifying that he went to Kansas to execute the warrant the defendant interrupted to say, "Hey, you wasn't the one who came and got me."

■ Nevertheless, his claim that in violation of the Uniform Extradition Act (RSMo 1959, §§ 548.010–548.120, V.A.M.S.) he was illegally returned to Missouri and indicted is no ground for his discharge of the robbery charge on the ground that the Missouri court thereby had no jurisdiction of his person. In Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541, a prisoner, in habeas corpus, claimed that while he was in Chicago he was "forcibly seized, handcuffed, blackjacked and took him to Michigan," all in violation of due process and thereby his murder conviction was a nullity. The court answered, however, "(t)his court has never departed from the rule announced in Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." The Frisbie case was applied in State v. Howe, Mo., 364 S.W.2d 546, in which the defendant claimed that he was kidnapped, not extradited, in Kansas.

■ In addition to his motion to quash the indictment the appellant relying on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 and other federal cases concerned with lineups filed a motion to suppress any lineup testimony for the reason that the lineup here was unreasonably suggestive in that there were but two persons in the lineup, that he was without requested counsel and was therefore denied due process. The insuperable difficulty with this point is that there is no support whatever in this record upon which to base it. On the hearing of the motion and again in the trial of the cause Mr. Weinstein testified that prior to the date of the holdup Johnson had been a customer in his store "a lot of times" and during the robbery he immediately recognized him even though he did not know his name. In describing the robbery he said, "I turned around and saw the defendant Johnson standing and I had known him from previous visits to the store. Q. About how many times had you seen him in the store? A. I would say approximately a dozen, and I noticed—I said, 'Hello' or 'What did you say?' or something and I noticed that when he spoke it seemed as if he didn't have any teeth in his mouth or something and he pointed a gun at me over this hosiery display and I remarked something like 'You got to be kidding' or 'Are you kidding?' because I knew him, and he said, 'Don't make any false moves' or 'Don't make any crazy moves. Just do what I tell you.'" Repeatedly Mr. Weinstein said that he had ample opportunity to observe appellant during the robbery and while he was nervous, shocked and surprised, he was positive in his recognition and told police on the day of the robbery that he knew one of the three robbers as a frequent customer in his store.

In these circumstances there is no place for the application of the federal cases: "A clearer case of independent identification of an accused, apart from the lineup, than that here presented can hardly be imagined. The girl knew the defendant and told the police his name. Here in-court identification had, as the trial court found it would have, an independent basis and Wade and Stovall are not applicable." State

v. Franklin, Mo., 448 S.W.2d 583, 584. Robbery cases all but directly in point are State v. Tehee, Mo., 445 S.W.2d 285; State v. Williams, Mo., 448 S.W.2d 865; State v. DeLuca, Mo., 448 S.W.2d 869; State v. Batchelor, Mo., 418 S.W.2d 929; State v. Reeder, Mo., 436 S.W.2d 629 and State v. Mentor, Mo., 433 S.W.2d 816. And, needless to say, the evidence supports the charge and the jury's finding of guilt. State v. Tehee, supra, and the two Harmon cases, State v. Harmon, Mo., 296 S.W. 391; State v. Harmon, 317 Mo. 354, 296 S.W. 397.

The appellant has two further points and they are interrelated: that the court erred in giving Instruction 3, the principal instruction, in that it permitted the jury to convict him if he "took and carried away any money or property" while the indictment charged that he took a revolver of the value of $70.00 and $1100.00 in cash "the money and personal property of the said David Weinstein." The appellant argues that the instruction submits an offense different from the one charged. The other point is that the court erred in overruling his motion for acquittal because the indictment alleged the theft of specific items from the person of the victim while the proof established a theft from the presence of the victim. In both instances the appellant concedes that all prior case law on these points is against him; he contends, however, that the prior cases should be reexamined and in any event that they have all been overruled by State v. Shepard, Mo., 442 S.W.2d 58, a case of attempted burglary. It may be sufficient to point out that this is a robbery case and is not concerned with the niceties of burglary and stealing and disjunctive submissions in either civil or criminal cases.

In robbery it is necessary to describe the property taken (77 C.J.S. Robbery § 36, p. 473), however, the description need not be in accurate detail because the kind and value of property are immaterial, the essence of the offense is the taking by putting in fear. RSMo 1959, § 560.120, V.A.M.S.; 46 Am.Jur. (Robbery) § 8, p. 142; Ann.Cas.

1912B, p. 402. The proof must show a taking of some property, substantially as charged, but if the taking of several items is alleged, it is sufficient to prove the taking of any one of them. 77 C.J.S. Robbery § 44b, p. 482. Here Mr. Weinstein owned and operated the store and unequivocally testified that Johnson took his keys from his person, the gun from a place beneath the counter and money, $700.00 or more, from the safe after he had compelled Mr. Weinstein to open the safe. In State v. Eddy, Mo., 199 S.W. 186, the charge was that the defendant took $26.00 "from the person" of Piggott while the proof was that Piggott was compelled to open the cash register and the defendant or his accomplice took the money from the register. Upon a claim of variance it was held that "the charge in the information of the taking of property from the person is fully met by proof of a taking from the presence of the person robbed * * * and that such a difference between the evidence and the charge does not constitute a fatal variance." This rule was applied in State v. Harmon, 296 S.W. l. c. 396, and State v. Lamb, 141 Mo. 298, 42 S.W. 827. In State v. Andrews, Mo., 371 S.W.2d 324, a bank robbery case, the information charged that the defendant robbed James W. Farley while the proof showed that the money was taken from another bank official and it was held that there was no variance. A variation, perhaps, of the rule is contained in State v. Pughe, Mo., 403 S.W.2d 635, "It is immaterial to the validity of the information whether Mrs. Goebel was the owner or the legal custodian merely of the $17 taken in the robbery. * * * The ownership of the property taken may be laid in the one in possession of the property at the time of the robbery, whether he be clerk, servant or other bailee." As to any money taken in the robbery "(i)t was only necessary to describe defendant's money 'as money.'" State v. Scarlett, Mo., 291 S.W.2d 138, 142. Thus there is no merit in the appellant's claim of error in Instruction 3 or as previously indicated in his claim that because of a variance the court

erred in not sustaining his motion for judgment of acquittal.

Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.