Lloyd A. CORBETT, Appellant,

v.

The STATE of Oklahoma, Appellee.

Nos. F–74–200, F–74–201.

Court of Criminal Appeals of Oklahoma.

Oct. 1, 1974.

As Corrected Oct. 2, 1974.

Rehearing Denied Oct. 22, 1974.

John Romig Smith, of Oyler & Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., Jeannette Haag, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Lloyd A. Corbett, hereinafter referred to as defendant, was charged, tried and convicted in Cases CRF–73–753 and CRF–73–574 in the District Court,

Oklahoma County, of the crime, in each case, of Distribution of a Controlled Dangerous Substance, to wit: LSD, in violation of 63 O.S.1971, § 2–401. The jury assessed punishment at a term of five (5) years' imprisonment and a fine of Five Hundred ($500.00) dollars in each case. Judgment and sentence was entered accordingly. The cases were consolidated for trial in the District Court and, upon defendant's motion, have been consolidated upon appeal.

At trial, Oklahoma City Police Officer Lucien Jones testified that while he was serving as an undercover narcotics agent on February 15, 1973, he went to the Bucking Far Bar where he met the defendant whom he knew only as "Blue." The officer related that he engaged the defendant in conversation and learned from him that he had a certain amount of LSD which he would sell at two dollars a "hit." The officer offered to buy some and the transaction was immediately completed by Jones giving the defendant four dollars in return for two tablets of the substance. Jones testified that the transaction out of which the second charge arose took place in the same bar three days later on February 18, 1973. He stated on direct examination that he was accompanied on that second occasion by a confidential informer and that he and the unnamed informer met the defendant in a hallway leading to a restroom at the rear of the establishment. The three men engaged in a brief conversation in which the defendant agreed to sell Jones more LSD at the same price he had paid earlier. Jones again gave the defendant four dollars in return for two tablets. The actual transfer took place inside the restroom out of the presence of the informer.

The introduction of evidence that established the chain of custody of the four tablets received by Officer Jones and that each tablet contained Lysergic acid diethylamide concluded the State's case.

The defendant testified in his own behalf that he had not at any time sold LSD. He stated that he was not present at the Bucking Far Bar on February 15, 1973. He stated that he was able to recall the events of that date because he and his partner, Carroll Hanna, had completed two roofing jobs that day, had gotten their truck stuck in the mud on the first job and had been forced to haul materials to the roof by hand on the second job because their hoist had broken. At the end of the day they returned to the roofing company and received a check in payment for their work. He testified that he then accompanied Mr. Hanna to a bar where they drank several beers. After leaving the bar they went to Mr. Hanna's apartment arriving there about 7:30 p. m. He stated that he stayed in that apartment for the rest of the night with Mr. Hanna who was caring for three small children while their mother worked. The defendant testified that on the second night in question, February 18, 1973, he was at home alone in his apartment in Oklahoma City where he remained the entire night.

Carol Ann Strother testified for the defense that she and her husband operated a roofing business that employed the defendant. She identified defendant's exhibit No. 1 as the check she wrote to Mr. Corbett on February 15, 1973, and testified that she delivered that check to him on that date.

Carroll Hanna testified that he was with the defendant on February 15, 1973, and that the defendant spent the night at his apartment on that date. Hanna's account of the events of that date did not differ materially from that of the defendant.

Gretha Bynum testified that on February 15, 1973, the defendant and Mr. Hanna came to her apartment and that she left her children in their care while she went to work.

The defendant asserts in his first proposition that this case must be reversed because the trial judge erred in refusing to

require the State to disclose the identity of the informer who accompanied Officer Jones to the Bucking Far Bar on February 18. The presence of this third person was first revealed during the direct testimony of Officer Jones. On cross-examination of that witness, defense counsel moved that the judge direct the State to furnish the name of the informer upon the ground that he was a material witness to the identity of the person who offered the drug for sale. The trial judge overruled that motion.

 It is a general rule, founded upon substantial policy considerations, that the government is privileged to withhold from an accused the identity of an informer. See, Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); 8 Wigmore, Evidence, § 2374, p. 762 (1961). Of course, before the privilege of non-disclosure is applicable in the first instance, the person whose identity the State seeks to protect must come within the rationale of the rule which is to encourage citizens to provide useful information to law enforcement officials by providing such citizens the protection of anonymity, and to insure the continued usefulness of those persons functioning as informers or police undercover agents. In this case there is no indication in the record that the informer provided information about this defendant or the offense charged. In his testimony, however, Officer Jones characterized that person as a "confidential informant," and the defense did not dispute that he was in fact an informer used by the police as a source of information. Since the person in question was an informer, even though he did not act as such in the instant case, the State could claim its privilege to refuse to disclose his identity.

 We first discussed the question of the disclosure of the identity of an informer in Kovash v. State, Okl.Cr., 519 P. 2d 517 (1974). We there recognized that the privilege of non-disclosure is not absolute and that where the identity of the informer is necessary and relevant to the defense the privilege must give way before the defendant's right to a fair trial. If a timely demand is not made, however, any right to disclosure is waived. When the defendant does make a timely demand, he bears the burden of establishing by a preponderance of the evidence that the informer's identity is necessary and relevant to a fair defense. Kovash v. State, supra, 519 P.2d at 520. Whether disclosure is compelled in a particular case is a matter for the discretion of the trial court which must make its determination by balancing the policy reasons underlying the privilege against the defendant's right to prepare his defense. Whether a refusal to compel the State to disclose is erroneous must depend upon the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors. Roviaro v. United States, supra. In support of his demand, the defendant may present evidence material to those factors. If, as in this case, disclosure is sought during a trial before a jury any evidence adduced by the defendant and the State shall be outside the presence of the jury.

 We have determined in the instant case that the trial judge did not abuse his discretion in overruling the defendant's motion to compel disclosure. The informer was present during the conversation which preceded the drug sale but was not present at the time of the actual transfer. His testimony therefore is relevant only to the question of the identity of the person who sold the drug to Officer Jones on the night of February 18. At the time the trial judge made his ruling, however, there was nothing in evidence before him from which he could conclude that such testimony was material to the determination of the guilt or innocence of this defendant. The police officer had positively identified the defendant as the man who sold him the tablets of LSD and had been fully cross-examined. There was no

'evidence before the court which contradicted or refuted that testimony and the defense did not proffer such evidence. We cannot say under such circumstances that the trial judge abused his discretion in refusing to require the State to reveal the identity of the third person present on February 18, 1973. Later in the course of the trial, the defense did introduce evidence which tended to present a conflict with the testimony of the officer. The demand for disclosure was not renewed, however, and was waived. See, Whittington v. State, 8 Md.App. 676, 262 A.2d 75, 79 (1970).

In his second proposition defendant urges that the trial judge committed error by refusing to comply with his request to give the following instructions:

"You are instructed that it is peculiarly within the power of the state to produce a witness who could give material testimony on an issue in the case (identity), that the failure to produce a witness whose testimony would elucidate the transaction creates the presumption that this witness's testimony would be unfavorable."

The so called "missing witness" instruction of which the above is an example grows out of the ancient principle that the non-production of evidence that would naturally have been produced by an honest and therefore fearless party permits the inference that the tenor of such evidence is unfavorable to the party's cause. We do not reach the question of propriety of such an instruction, under our practice in a different case, for the principle upon which it must rest is clearly inapplicable to these circumstances. For that reason defendant's contention of error in refusing a missing witness instruction is wholly without merit.

For the above and foregoing reasons we are of the opinion that the judgment and sentence appealed from should be, and hereby is, affirmed.

BLISS, P. J., and BUSSEY, J., concur.