Alvin Lee **HAZELWOOD**, **Appellant,**

v.

The **STATE** of Oklahoma, **Appellee.**

No. F–74–389.

Court of Criminal Appeals of Oklahoma.

July 14, 1975.

Rehearing Denied Aug. 6, 1975.

Jo-Ann Askins, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jim Patton, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Alvin Lee Hazelwood, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–2956, for the offense of Robbery with Firearms, in violation of 21 O.S.1971 § 791. His punishment was fixed at a term of thirty-eight (38) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Thomas W. Wilson testified that he was working at Wilson's Pharmacy, 2820 Parklawn, Midwest City, on October 8, 1973. At approximately 10:45 p.m. he was robbed at gunpoint of his money and narcotics by a Caucasian male. The robber tied the witness and left, according to an unknown customer, in a blue and white automobile. Witness Wilson testified he had previously picked the defendant out of a group of pictures shown to him by the police.

On cross-examination, Mr. Wilson elaborated upon why he thought the defendant to be the robber, testifying as follows:

"A. . . . He has several distinguishing, not totally unique characteristics.

"For one, for the general build and everything, but, his skin texture for one thing.

"For instance, myself, when I shave, an hour later it looks like I need to shave again, but he has the kind of skin texture, beard-combination, he has a heavy beard as you can see, he has grown one, but, he looked cleanly shaven at 11:00 o'clock at night, he looked like he had just shaved.

"The next—whenever it was, five to seven days later, you said, in the lineup, at 2:00 or 3:00 in the afternoon he looked cleanly shaven.

"He has a very distinguishing lip, below his nose, around his mouth and lips, and his chin is very distinguishing, and his hands—I got a good look at his hands.

"His hands are large, his fingers are short.

"The color of his skin, the color of his hair.

"The manner he talked in. He speaks as an educated man, no accent, very—has a lot of timber to his voice.

"The mind is a very unique instrument. It can be a good camera when it is applied.

"When I—when a guy threatens my life, that motivates me to remember." [Tr. 15–16]

Officer Myers testified he took six pictures to the pharmacy for Mr. Wilson to view. The defendant's photograph was the third or fourth one from the top. On cross-examination, he testified that all of the photographed individuals were white, with the same build and size. The pictures were also the same size.

Detective Hill testified that he received information regarding the robbery on October 11th. The witness refused to disclose the informant's identity. After Mr. Wilson identified the defendant from the picture, Detective Hill managed to locate the defendant. The defendant was asked to go to the police station and he complied. After being questioned for quite some time, the defendant related his alibi to the police. The witness testified they checked

out some of the defendant's story, then charged him with Robbery with Firearms. Detective Hill testified he talked with the defendant's wife at a later time.

On cross-examination, the witness testified that the defendant voluntarily went to the police station, and that the defendant did not have a beard or moustache on October 11th or 12th.

Frank Harris, testifying for the defendant, stated that the defendant had a beard on October 8–11.

Mary Ann Hazelwood testified that her husband, the defendant, got home around 8:00 p.m. on October 8th, and remained at home all night.

On cross-examination, the witness testified that her husband left around 10:00 p. m., and returned later.

On redirect examination, Mrs. Hazelwood testified that her husband had a beard, similar to that which he wore at trial, on October 8th, and that he was driving a gold 1962 Thunderbird.

Alvin Lee Hazelwood, the defendant, testified in his own behalf. He stated that on October 8th he left his wife's residence around 10:00 p.m. to go to a 7–11 Store and purchase some milk, a six-pack of beer, and two cokes for his children. The grocery store was only a mile from the residence and he was gone a total of fifteen minutes. Subsequently, the defendant learned that the police were looking for him and sent word to them. He testified that he shaved his beard off before he sent word to the police so that he could go there clean-shaven.

On cross-examination, the defendant testified he had been in Oregon for a month and had grown the beard at that time. He stated that he shaved off the beard prior to talking with the police so as not to appear "scroungy." On re-direct, he testified that he had a scar over his left eye.

In rebuttal the State called Detective Jack Hill, who testified that the defendant's wife told him that her husband arrived home between 8:30 and 9:00 p.m. and

left around 10:00 p.m., returning home between 11:30 and 12:00 p.m.

The defendant complains that the trial court erred in overruling his Motion for New Trial and that the verdict is not substantiated by sufficient and competent evidence. Numerous assignments of error are thereunder asserted, the first claiming that the State failed to prove that the victim was in fear during the robbery.

Robbery is defined in 21 O.S.1971, § 791, as follows:

"Robbery is a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of *force or fear*." [Emphasis added]

The defendant argues that although the alleged robber pointed a gun at the victim and demanded the money and narcotics, the assurance by the robber, testified to by the victim, "All of this time he kept saying quickly now, hurry, and don't worry, I am not going to hurt you," [Tr. 9], rebutted the presumption of fear that arises when one points a gun in a threatening manner toward another. We do not agree.

 In *Ross v. State,* 31 Okl.Cr. 143, 237 P. 469 (1925), we stated:

" . . . It has been held that, if there is an assault which would furnish a reasonable ground for fear, the robbery is complete. . . . "

See also *Whitehead v. State,* Okl.Cr., 526 P.2d 959 (1974). In the first paragraph of the Syllabus in *Jones v. State,* 84 Okl.Cr. 81, 179 P.2d 484 (1947), we held:

"Where a pistol is pointed in a threatening manner at one who is the owner or custodian of money, who thereupon permits it to be taken, such act is robbery, although the owner or custodian may not state he is in actual fear, since fear is presumed when such act is committed violently and against the will of the person robbed."

This presumption of fear on behalf of the person robbed when a gun is pointed at

him in a threatening manner means that actual fear on the part of that person need not be proven. See *Ross v. State, supra,* citing *State v. Lamb,* 141 Mo. 298, 42 S.W. 827. We fail to see how the instant case differs from the authority cited above. In the case at bar, it is sufficient that the victim had a gun pointed at him in a threatening manner, and permitted the money and narcotics to be taken. This act being completed, it is irrelevant that the victim might have had assurances from the robber that he would not hurt him.

 We further observe that it is unnecessary for the State to prove the element of fear, since 21 O.S.1971, § 791, *supra,* describes robbery as a wrongful taking accomplished by means of force *or* fear, not force *and* fear. See *Whitehead v. State, supra.* The testimony adduced at the trial demonstrated that the defendant exhibited a pistol, demanded the money and narcotics, and tied the victim's hands, which establishes the element of force.

Defendant alleges that it was error to admit hearsay testimony by witness Wilson. The hearsay complained of appears in the transcript at page 10 as follows:

"Q. All, right, and what happened after he tied you up, did he leave the store?

A. He left.

Q. What did you do then, if anything?

A. Well, I got my hands loose about the time a lady customer came in, and so I thought it was him coming back, so I didn't get up right then. When I saw it was a lady, I stood up. And I saw the car *that she said he got into,* pulling out onto the street. [Emphasis added]

Q. And what—could you describe that vehicle if you know?

A. Well, it was a blue and white compact of some kind."

 We first observe that no objection was interposed to the testimony alleged as error. Further, we believe the testimony was properly admitted as being relevant

and material, and therefore, not hearsay. In the second paragraph of the Syllabus in *Wafers v. State,* Okl.Cr., 444 P.2d 825 (1968), we held:

"The statements and exclamations or acts and conduct of third persons are admissible in evidence when they are so closely connected with the crime as to constitute part of the res gestae."

The defendant further asserts as error that he was denied a fair and impartial trial because an informant was not identified. The alleged error arose from Detective Jack Hill's testimony, which appears in the transcript at pages 23 and 24 as follows:

"Q. And, during the morning hours of approximately 9:00 a.m., in the morning, did you happen to have the occasion to receive any information regarding an armed robbery?

A. Yes, sir, I did.

Q. And, who did you receive this information from?

A. I would rather not say.

Q. Was it an individual?

A. Yes, sir.

Q. Was it what you consider an informant?

A. Yes, sir.

Q. All, right. . . ."

 The defendant's contention is wholly without merit. This Court held, in *Corbett v. State,* Okl.Cr., 527 P.2d 200 (1974):

"[T]he privilege of non-disclosure is not absolute and that where the identity of the informer is necessary and relevant to the defense the privilege must give way before the defendant's right to a fair trial. *If a timely demand is not made, however, any right to disclosure is waived. . . .*" [Emphasis added]

A careful review of the record reveals that no such demand was made. We, therefore, find that in accordance with the guidelines set forth in *Corbett, supra,* the defendant waived the right to discover the said informer's identity.

The defendant further alleges that the in-court identification of the defendant as the robber by witness Wilson was tainted. As the facts have indicated, Officer Myers obtained a picture of the defendant and took it, with five others, to Wilson's Pharmacy where the witness picked out the defendant's picture [Tr. 19–20]. At the trial, witness Wilson pointed out the defendant as the robber. The defendant argues that the previous picture identification by the witness tainted the subsequent in-court identification. The rule enunciated by the Supreme Court of the United States establishes the proper standards for pretrial identification techniques. In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the Supreme Court held:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. . . ."

■ The record does not reflect that the defendant objected to the in-court identification of the defendant, nor does it reflect that the defendant made a request for an evidentiary hearing prior to, or during, the trial. In such circumstances the alleged error is improperly before this Court. See *Carson v. State*, Okl.Cr., 529 P.2d 499 (1974); *Bridgeman v. State*, Okl.Cr., 496 P.2d 431 (1972).

■ Although this assignment of error is improperly before this Court, we observe that the identification was not so tainted as to render it inadmissible. Officer Myers took six pictures to Mr. Wilson, all individuals of similar size and build, with the defendant's picture placed third or fourth from the top of the stack. The officer had no conversation with Mr. Wilson while he was examining the pictures. From Mr. Wilson's testimony, he recalled in detail the features of the defendant. We conclude, therefore, that the in-court identification was based upon the witness' observation of the defendant at the scene of the robbery, rather than the pre-trial identification procedure.

Defendant next complains that his Miranda rights were violated. We assume from defendant's brief that he is alleging that the alibi which was testified to by the police, is the tainted evidence in question. We note that the transcript fails to state whether a Miranda warning was given. As the facts previously indicated, the police obtained reason to believe the defendant might be connected with the robbery in question from the picture identification. The police went to the defendant's residence and the following occurred:

"Q. After you received the phone call, what did you do?

A. I went back to the original place, the address on West Minister and talked with the Defendant.

Q. All, right, and what did you talk to him about?

A. I advised him at that time of the situation of what had transpired; also that his photograph had been picked out of some other photographs, and asked him to come and go with me at that time, and he did.

We went to the police station, and set and talked to the defendant for quite some time, and we asked where abouts, if possible, he could remember on that particular evening of the robbery, and he told us to the best of his recollection where he had been.

He had evidently just got back from Oregon that day, or the day prior, and . . ."

Q. You say the day prior to what?

A. The date prior to the robbery.

\*　　\*　　\*　　\*　　\*　　\*

Q. What did you do after you checked this information out?

A. When the reports were made, and he was subsequently charged.

\*　　\*　　\*　　\*　　\*　　\*

Q. . . . And did you have occasion to talk with him after that, at all?

A. No.

\*　　\*　　\*　　\*　　\*　　\*

Q. . . . Did you ever talk to his wife?

A. Yes, sir.

Q. And was this in relation to the defendant?

A. Yes, sir. He had stated that on the evening of the robbery that he had arrived at his wife's residence between 8:30 and 9:00 and stayed there, with the exception of him, her and the children leaving to go to the grocery store, which is approximately a mile away from her residence to get some groceries. They had all then returned to the house, and, uh, he said that he never left again that evening." [Tr. 26–28]

■ A careful review of the record discloses that the defendant did not object to the introduction of the alleged tainted testimony. This Court has held that where a defendant appeals on grounds that an inadequate Miranda warning was given, and fails to object to the introduction of testimony about the defendant's confession, that any error which might have been raised is waived. See *Pierce v. State,*

Okl.Cr., 492 P.2d 329 (1971); *Borden v. State,* Okl.Cr., 407 P.2d 909 (1965).

■ Moreover, we observe that the statements made by the defendant to the police were not confessions, but were exculpatory statements denying the commission of the crime and asserted that he could not have committed the same since he was elsewhere at the time the robbery was committed. For the reasons above stated, we find this assignment of error to be without merit.

Defendant's final assignment of error alleges that when the record is viewed as a whole, the cross-examination of Mary Ann Hazelwood was repetitious, argumentative, improper and highly prejudicial. On direct examination, the witness testified that her husband arrived home on the night of the robbery between 7:00 and 8:00 p.m. and stayed all night. [Tr. 37–38] Mr. Warren, for the State, cross-examined the witness regarding a prior conversation with Detective Hill on October 11th, as follows:

"Q. Now, you testified here while ago that your husband never left the house, is that right?

A. I didn't testify to that, no.

Q. What did you say?

A. He asked me if I left the house with my husband and I said no.

Q. All right. Did your husband leave the house that evening?

A. Yes, he did.

Q. And, approximately what time was it when he left?

A. I couldn't tell you. I know the news was on T.V.

Q. All, right. Did you tell Detective Jack Hill that he left the house at approximately 10:00 P.M. on October the 9th, 1973?

A. Yes, I did.

Q. Okay. And, he left by himself, is that right?

A. This is true.

Q. And, how long was it before he got back?

A. I don't have no idea. He wasn't gone long though.

Q. Well, on this same—the same time you were talking to Detective Jack Hill, didn't you, in fact, tell him he was gone anywhere from one and a half to two hours, and returning at approximately 12:00 midnight?

A. Not that long.

Q. You didn't tell Detective Hill that?

A. No. I said he had left and went to the store.

Q. And, he came right back from the store?

A. Yes.

Q. And, you didn't tell Detective Jack Hill that he was gone anywhere from one and a half to two hours?

A. No.

Q. And, didn't return until 12:00 midnight?

A. No.

Q. What was your husband wearing that day?

A. He had on a yellow-checkered shirt with a pair of white levy britches that was very dirty.

Q. What did he bring home with him?

A. A six-pack of beer, two cokes and a quart of milk.

Q. All, right. This is—you told Detective Jack Hill that, is this correct?

A. I did.

Q. You didn't tell him about the hour and a half to two hours, is that right?

A. I did not.

Q. How long was he gone?

A. Not very long. He was gone, but he didn't—wasn't gone no length of time. I wouldn't state how long he was gone.

Q. You didn't even know that—you don't know anything about what he did, after he left, is that correct?

A. I do not."

From the record, we observe that defendant failed to object and save exceptions. In *Love v. State*, Okl.Cr., 360 P.2d 954 (1960), this Court held, in paragraph three of the Syllabus:

"It is the duty of counsel to raise at the proper time all objections to the proceedings and save exceptions to the court's adverse rulings thereon, and when this is not done, they will be treated as waived unless they are of such a nature as to deny defendant a fair and impartial trial."

See also *Davis v. State*, Okl.Cr., 514 P.2d 1195 (1973).

■ After a careful review of the record, we fail to see how the State's cross-examination denied the defendant a fair and impartial trial. The import of Mr. Warren's repeated questions regarding a prior statement the witness had made to another officer was subsequently introduced through rebuttal testimony by Detective Hill. Although not in contention here, such rebuttal testimony has been held proper. See *Farmer v. State*, Okl.Cr., 507 P.2d 1303 (1973). For these reasons, we find this assignment of error to be without merit.

Having dealt with all of defendant's assignments of error, and finding nothing which would require modification or reversal, the judgment and sentence appealed from is accordingly *affirmed*.

BLISS, J., concurs.

BRETT, P. J., not participating.