**Leroy Alvin WOODROW, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**Nos. F–76–241, F–76–242.**

Court of Criminal Appeals of Oklahoma.

Aug. 27, 1976.

Hugh V. Rineer, Jones, Jones & Rineer, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Michael W. Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Leroy Alvin Woodrow, hereinafter referred to as defendant, was charged, tried without jury and convicted in the District Court, Tulsa County, Cases Nos. CRF–75–996 and CRF–75–997, for the crimes of Possession of Marihuana With Intent to Distribute, in violation of 63 O. S.Supp.1975, § 2–401, and Possession of a Controlled Drug, in violation of 63 O.S. Supp.1975, § 2–402. His punishment was fixed at a term of four (4) years' imprisonment in the State penitentiary for each offense, with the sentences to run concurrently. From said judgments and sentences, defendant has perfected this timely appeal.

Due to the nature of the assignments of error of the defendant, it is not necessary to recite all the facts.

The only issue in question relates to the affidavit for the search warrant. The police officer's affidavit provides in pertinent part as follows:

"Affiant further states that on May 5, 1975, in the early afternoon hours, he was contacted by a reliable informant who stated that he had been to the above described residence [528 East 48th Street North, Tulsa, Oklahoma] within the last 24 hours and had seen a large quantity of a brown powdered substance contained in tin-foil and was told to him by the defendant, Thomas Perry Brown, that the brown, powdered substance was Heroin. The Informant further stated to your affiant that the defendant was selling Heroin for the price of $25.00 a pill. Your Affiant has known said informant for approximately two (2) years and has received information from this informant on eight (8) different occasions which has resulted in the arrest of twelve (12) persons concerning narcotics violations with the conviction of nine (9) of these persons and the other two remaining cases pending in Tulsa County District Court. Further, your Affiant states that he knows the term 'pill' to be the street term for a package of narcotics and sells for the price of $25.00 a package and higher.

"Further your Affiant states that he has received information from the informant in the past concerning a brown, powdered substance which resulted in the arrest of the aforementioned twelve (12) persons where a brown, powdered substance was recovered and the chemical analysis proved this substance to be Heroin.

"Your Affiant further states that he is a police officer for the City of Tulsa assigned to the Narcotics Division and has been so assigned in that capacity for the last three years. Further your Affiant states that he has been trained in the recognition and identification of controlled dangerous substances and narcot-

ics by the United States Department of Justice. (O.R. 37, CRF–75–996; O.R. 37, CRF–75–997)

Defendant, in his first assignment of error, contends that his motion to suppress the evidence should have been granted for the simple reason that the affidavit for search warrant was defective. The gravamen of defendant's complaint is that the informant apparently never stated where the heroin was, and further that he was not reliable.

In *Leonard v. State,* Okl.Cr., 453 P.2d 257 (1969), this Court in the first paragraph of the Syllabus stated in part:

"In order to meet constitutional standards required by *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637, an affidavit for a search warrant must contain information sufficient to comply with one of the following requirements, either

\*   \*   \*   \*   \*   \*

"(b$_1$) If based upon hearsay information of a reliable informant, it must contain positive language, under oath, setting forth in detail why the informant is deemed to be reliable in order that the magistrate can judicially determine whether the informant is, in fact, reliable, and should further set forth in detail whether the informant, himself, observed the violation, or the presence of contraband or articles to be seized, upon the premises; . . ."

We held in *Coslow v. State,* Okl.Cr., 490 P.2d 1116, 1118 (1971):

". . . There must be 'sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor.' *Spinelli v. United States,* supra, 393 U.S. at 416, 89 S.Ct. at 589."

As was stated in *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965):

"[A]ffidavits for search warrants, . . . must be tested and interpreted by magistrates and courts in a common-

sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. . . ."

Further, it was stated in *United States v. Ventresca,* supra, that:

"[W]here reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. . . ." (at 380 U.S. 109, 85 S.Ct. 746.)

▮ Turning to the facts of the instant case, it was shown that the confidential informant was proven to be reliable in that on eight different occasions within the past two years he had offered information which resulted in the arrest of twelve persons concerning narcotics violations with the conviction of nine of these persons and the other persons pending trial in two cases. See, *Tittle v. State,* Okl.Cr., 539 P.2d 422 (1975); *Simon v. State,* Okl.Cr., 515 P.2d 1161 (1973). The defendant appears to be concerned with the fact that there have been twelve arrests and yet there will only be eleven criminal cases. However, commonsense would dictate that two of these arrestees were being tried conjointly.

▮ With regard to the confidential informant's credibility it was shown on the face of the affidavit that he had been at the residence within the last 24 hours and had seen a large quantity of brown powdered substance which had been related to him as being heroin, selling for the price of $25.00 a package. The only common-

sense conclusion that can be drawn from this situation is that the informant personally observed the narcotics in the residence.

Therefore, it is our opinion that the affidavit constitutes something substantially greater than a casual rumor. We believe that the facts and circumstances set forth in the affidavit are sufficient to enable the magistrate to independently judge the informant's conclusion that the contraband was where it was purported to be. See, *Simon v. State,* supra. If we were to read the affidavit otherwise we would be reading it in that "hypertechnical" sense that does violence to the fact that the magistrate is the one who determines the probable cause for issuance of a search warrant. We decline to do so, notwithstanding the fact that this is not the paradigm for an affidavit.

In defendant's second assignment of error he contends that the court at each stage of the proceeding erred in failing to grant his motion to disclose the informant. Moreover, he contends that he was unable to present an adequate and complete defense for the reason that he could not cross-examine the State's primary witness, the informant.

The defendant relies upon *Roviaro v. United States,* 353 U.S. 53, 60, 61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645 (1957), wherein the United States Supreme Court stated:

"A further limitation on the applicability of the privilege [nondisclosure] arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. . . ."

However, in the *Roviaro* case, supra, the informant was an "undercover employee who had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged." In that case disclosure was necessary in order that the defendant could pursue a defense *at trial.*

The United States Supreme Court in *Roviaro* held:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest and protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (353 U.S. at 62, 77 S.Ct. at 628.)

When a defendant seeks disclosure of a confidential informant *at trial* we have held in *Kovash v. State,* Okl.Cr., 519 P.2d 517, 520 (1974), that:

". . . The burden is upon the defense to show that the preponderance of the evidence substantiates that disclosure relevant to a fair defense."

See also, *Corbett v. State,* Okl.Cr., 527 P. 2d 200 (1974).

We believe that the instant case is more analogous to the situation in *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L. Ed.2d 62 (1967). In that case nondisclosure was upheld where the informant gave the officers information upon which probable cause for arrest was predicated. The Supreme Court held that:

"What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever ap-

proached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the *preliminary one of probable cause,* and guilt or innocence is not at stake. . . ." (Emphasis added) (386 U.S. at 311, 87 S.Ct. at 1062.)

This is predicated upon the fact that "nothing in the Due Process Clause of the Fourteenth Amendment requires a state court judge in every such hearing to assume the arresting officers are committing perjury." (386 U.S. at 313, 87 S.Ct. at 1063.)

In the instant case the defendant challenged the nondisclosure at the preliminary hearing. The confidential informant had merely related sufficient information upon which to predicate probable cause. This does not go to the guilt or innocence of the accused, but merely to a determination of probable cause to justify a search warrant. See, *Chronister v. State,* Okl.Cr., 538 P.2d 215 (1975). If we were to require disclosure in such situations it would do violence to the rule "which is to encourage citizens to provide useful information to law enforcement officials by providing such citizens the protection of anonymity, and to insure the continued usefulness of those persons functioning as informers or police undercover agents." *Corbett v. State,* supra, at 203.

Even if we were to hold that the issue of disclosure went to the guilt or innocence of the defendant, our conclusion would be the same. It is incumbent upon defendant to show by a preponderance of the evidence that the disclosure is relevant to a fair defense. This defendant has failed to do so as he merely stipulated the transcript of the preliminary for the nonjury trial.

Therefore, we find defendant's second assignment of error to be wholly without merit.

Defendant in his final assignment of error contends that the evidence does not justify the sentence imposed. This Court does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the Court. See, *Ellis v. State,* Okl.Cr., 503 P.2d 575 (1972); and, *Wright v. State,* Okl.Cr., 499 P.2d 947 (1972). After considering all the facts and circumstances in the instant case we do not find the sentence so shocking as to mandate modification of the sentence.

Accordingly, the judgment and sentence is, hereby, *AFFIRMED.*

BUSSEY and BLISS, JJ., concur.